# TAB 1

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Federal Bureau of Investigation<br>Boston Field Office<br>One Center Plaza, Suite 600<br>Boston, MA 02108 | Catherine M. (Deegan) Patterson et al<br>(see attached list), Neil Rossman,<br>Paul F. Denver, Rossman, Rossman & Eschelbacher |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH<br>2/1/55 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>March 12, 1965 - Present | 7. TIME (A.M. OR P.M.)<br>N/A |
|---|---|---|---|---|

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

(See attached Addendum)

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTEND OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

N/A

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

(See attached Addendum)

**11. WITNESSES**

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| (See attached Addendum) | |

**12. AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| N/A | $10,000,000.00 | $30,000,000.00 | $40,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)*<br>*[signature]* Adm. and Individually | 13b. Phone number of signatory<br>603-382-7745 | 14. DATE OF CLAIM<br>12/5/03 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)* |

Previous editions not usable.

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2     USAPPC V1.00

# ADDENDUM TO STANDARD FORM 95

This Addendum is an attachment to the FTCA notices submitted to the Federal Bureau of Investigation on_, 2003, on behalf of Catherine M. (Deegan) Patterson individually and as Administratrix of the Estate of Edward (Teddy) Deegan and Yvonne (Deegan) Gioka, individually, the daughter of Edward "Teddy" Deegan.

**Response No. 1** (Appropriate Federal Agency).

This claim is hereby submitted to Federal Bureau of Investigation CL ~~Charles~~ Kenneth ~~Prouty~~ Kaiser, Special Agent-In-Charge, Boston Field Office, One Center Plaza, Suite 600, Boston, MA 02108.

**Response No. 2** (Claimants and Personal Representatives).

1. Catherine M. (Deegan) Patterson. Date of Birth: 2/1/55
   15 Hickory Lane, Danville, NH 03819.
   Telephone: (603) 382-7745

2. Yvonne (Deegan) Gioka. Date of Birth: 1/29/52
   190 Huntington Circle, Alpharetta, GA 30004
   Telephone: (770) 442-5722

3. Catherine M. (Deegan) Patterson as Administratrix of the Estate of Edward (Teddy) Deegan.

Legal Representatives:

Neil Rossman, Esq.
Paul F. Denver, Esq.
Rossman, Rossman & Eschelbacher
Marketplace Center - North
200 State Street
Boston, MA 02109
Telephone: (617) 439-9559

**Response No. 8** (Basis of Claim).

This claim for wrongful death and pain and suffering arises out of the murder of Edward (Teddy) Deegan on or about March 12, 1965 in Chelsea, Massachusetts. Mr. Deegan was the father of Yvonne (Deegan) Gioka and Catherine (Deegan) Patterson.

The tortious and wrongful acts and omissions of the Federal Bureau of Investigation (FBI) and certain named agents thereof, including former agents and supervisors of the Boston field office of the FBI, caused and contributed to cause the substantial damages and injuries suffered by the claimants. The facts of this claim are drawn primarily from the findings of Massachusetts Superior Court Judge Margaret Hinkle as stated in <u>Commonwealth v. Peter J. Limone,</u>

2001 WL 30494 (Mass. Super.). Certain information in support of this claim is also gathered from factual findings of U.S. District Court Judge Mark L. Wolf in the case of United States v. Salemme, 91 F.Supp.2d 141 (D Mass. Sept. 15, 1999) and federal documents.

For some time, at least months, before March, 1965, the FBI was using Vincent James Flemmi as an informant. As early as October, 1964, the Boston office of the FBI informed the director of information that Flemmi was difficult to control and violent. The director was also told that an informant had stated to the FBI agents that Flemmi had told the informant that he wanted to kill Edward "Teddy" Deegan, allegedly because Deegan had murdered a friend or acquaintance of Flemmi after leaving the West End Social Club. On or about October 5, 1964, an informant advised H. Paul Rico, a special agent-in-charge, Boston office, that Vincent Flemmi was an extremely dangerous individual, that he suspected that Flemmi had committed several murders and that he wanted to be considered the best hit man in the area. In early 1965, the FBI learned that Raymond Patriarca wished to contact Vincent Flemmi to solve a particular problem. On or about March, 1965, an informant stated that a person under Patriarca, who was a kingpin in the Mafia, had said that a Boston hoodlum was giving orders to Flemmi to kill people. At the same time, Patriarca had told the informant that Flemmi had come to Providence to get the okay to kill Teddy Deegan. An unnamed person also advised the FBI, according to their own documents, on March 9, 1965, that James Flemmi and another known killer, Joseph Barboza, had contacted Patriarca and that they desired to get the okay to kill Deegan. According to this source, Flemmi said that Deegan is an arrogant, nasty sneak and should be killed. On March 10, 1965, an informant apparently advised special agent-in-charge Rico that James Flemmi had told the informant that Patriarca had put out the word for Deegan to be "hit" and that a dry run had already been made. He also said that a close associate of Deegan's had agreed to set Deegan up and that the murder would occur in the next few evenings because Deegan evidently pulled a gun and threatened some people in a restaurant in Revere, Massachusetts.

Despite this knowledge, neither H. Paul Rico nor any other employee or agent of the FBI took any steps to warn Teddy Deegan that his life was in danger. Nor did any FBI personnel take any steps to prevent Vincent Flemmi or any other person from murdering Deegan. On March 12, 1965, Teddy Deegan was gunned down in an alley in Chelsea, Massachusetts. On March 13, 1965, an informant advised Rico that James Flemmi had contacted him and told him that Deegan had been moved the previous evening to a finance office in Chelsea by Roy French, who was setting Deegan up, and that French shot Deegan. Flemmi also said that Joseph Martin and Ronnie Casessa came out the door and one of them fired into Deegan's body and that Joseph Barboza was also present.

After the murder of Deegan, the FBI concealed the information which it had and various individuals, including Joseph Salvati and Peter Limone, stood trial for the murder of Deegan and were convicted. Several of them were on death row for a considerable period of time and, before their sentences were committed to

life in prison, Salvati and Limone spent approximately thirty years in prison, even though the FBI knew that they had nothing to do with Deegan's murder.

Meanwhile, H. Paul Rico, who is now retired, remained a special agent of the FBI, principally or totally in the Boston office. Rico was in fact the founder and supervisor of the Boston FBI's OC squad (organized crime squad). Rico and others engaged in a substantial and ongoing coverup to conceal their prior knowledge of the threat to Deegan and their part in the devastating, misplaced prosecution of Salvati, Limone and the others. That story is not over. Undoubtedly, there is more information regarding the unnecessary death of Teddy Deegan.

The FBI is liable for the damages and losses suffered because of the acts perpetrated against Teddy Deegan and his family. Those acts were within the ambit of foreseeable risk created by the FBI's breach of its duty of care arising from its illicit and "special relationship" with its informants, including unnamed informants, James Flemmi, and Joseph Barboza. The FBI knew of the propensities of Flemmi, knew of his threats to Deegan and yet negligently and tortiously continued the relationship with both Barboza and Flemmi, granted them a shield to continue that relationship unabated and failed to warn or protect Deegan from violence at the hands of Flemmi, Barboza and others. This direct negligence on the part of the FBI substantially contributed to the wrongful death of Teddy Deegan, the losses which his children have endured and the pain and suffering of Teddy Deegan.

The claimants submit that the tortious and wrongful acts and omissions of former agents, H. Paul Rico, John Connolly, and John Morris, as well as many others, caused the wrongful death and physical injury of Teddy Deegan and gave rise to the loss by Deegan's daughters of their father's love, companionship, affection, support and other elements of a wrongful death claim. They also experienced extreme emotional distress as a result thereof.

**Response No. 10** (Personal Injury and Wrongful Death)

As a result of the tortious and wrongful acts and omissions of the FBI as summarized above, each of the individuals named claimants suffered serious personal injury as follows:

1. Loss of parental consortium, society and companionship of Yvonne Gioka and Catherine Patterson;
2. As young children, Catherine and Yvonne were violently deprived of the love, guidance and support of their father. They experienced extreme emotional distress, trauma and mental suffering and anguish;
3. The decedent of Catherine Patterson and Yvonne Gioka, Edward "Teddy" Deegan, suffered wrongful death and extreme emotional distress, psychic trauma and mental suffering and anguish.

**Response No. 11** (Witnesses)

1. H. Paul Rico (Florida);
2. Vincent Flemmi (address unknown);
3. Stephen Flemmi (incarcerated);
4. John Connolly (incarcerated);
5. Dennis Condon (address unknown);
6. Agents and personnel at FBI – Boston (1964-present);
7. Agents and personnel at FBI headquarters (1964-present);
8. Peter Limone (address unknown);
9. Domenic Salvati (address unknown);
10. Private investigators;
11. Various public and private records keepers;
12. All persons identified in Judge Wolf's opinion in <u>United States v. Salemme</u>;
13. Catherine (Deegan) Patterson;
14. Yvonne (Deegan) Gioka
15. All persons identified in Judge Hinkle's opinion in <u>Commonwealth v. Peter J. Limone</u>.

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|
| 1. Submit To Appropriate Federal Agency:<br><br>Federal Bureau of Investigation<br>Boston Field Office<br>One Center Plaza, Suite 600<br>Boston, MA 02108 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code)<br><br>Yvonne (Deegan) Gioka et al<br>(see attached list), Neil Rossman,<br>Paul F. Denver, Rossman, Rossman & Eschelbacher | |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>1/29/52 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT<br>March 12, 1965 - Present | 7. TIME (A.M. OR P.M.)<br>N/A |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

(See attached Addendum)

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTEND OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

N/A

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

(See attached Addendum)

11. WITNESSES

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| (See attached Addendum) | |

12. (See instructions on reverse)  AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| N/A | $10,000,000.00 | $30,000,000.00 | $40,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>*Yvonne Gioka* | 13b. Phone number of signatory<br>770-442-5722 | 14. DATE OF CLAIM<br>12/ 5 /03 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM<br>The claimant shall forfeit and pay to the United States the sum of $2,000, plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS<br>Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

Previous editions not usable.

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2          USAPPC V1.00

## ADDENDUM TO STANDARD FORM 95

This Addendum is an attachment to the FTCA notices submitted to the Federal Bureau of Investigation on _, 2003, on behalf of Catherine M. (Deegan) Patterson individually and as Administratrix of the Estate of Edward (Teddy) Deegan and Yvonne (Deegan) Gioka, individually, the daughter of Edward "Teddy" Deegan.

**Response No. 1** (Appropriate Federal Agency).

This claim is hereby submitted to Federal Bureau of Investigation CL ~~Charles~~ Kenneth ~~Prouty~~ Kaiser, Special Agent–In–Charge, Boston Field Office, One Center Plaza, Suite 600, Boston, MA 02108.

**Response No. 2** (Claimants and Personal Representatives).

1. Catherine M. (Deegan) Patterson. Date of Birth: 2/1/55
   15 Hickory Lane, Danville, NH 03819.
   Telephone: (603) 382-7745

2. Yvonne (Deegan) Gioka. Date of Birth: 1/29/52
   190 Huntington Circle, Alpharetta, GA 30004
   Telephone: (770) 442-5722

3. Catherine M. (Deegan) Patterson as Administratrix of the Estate of Edward (Teddy) Deegan.

Legal Representatives:

Neil Rossman, Esq.
Paul F. Denver, Esq.
Rossman, Rossman & Eschelbacher
Marketplace Center - North
200 State Street
Boston, MA 02109
Telephone: (617) 439-9559

**Response No. 8** (Basis of Claim).

This claim for wrongful death and pain and suffering arises out of the murder of Edward (Teddy) Deegan on or about March 12, 1965 in Chelsea, Massachusetts. Mr. Deegan was the father of Yvonne (Deegan) Gioka and Catherine (Deegan) Patterson.

The tortious and wrongful acts and omissions of the Federal Bureau of Investigation (FBI) and certain named agents thereof, including former agents and supervisors of the Boston field office of the FBI, caused and contributed to cause the substantial damages and injuries suffered by the claimants. The facts of this claim are drawn primarily from the findings of Massachusetts Superior Court Judge Margaret Hinkle as stated in Commonwealth v. Peter J. Limone,

2001 WL 30494 (Mass. Super.). Certain information in support of this claim is also gathered from factual findings of U.S. District Court Judge Mark L. Wolf in the case of United States v. Salemme, 91 F.Supp.2d 141 (D Mass. Sept. 15, 1999) and federal documents.

For some time, at least months, before March, 1965, the FBI was using Vincent James Flemmi as an informant. As early as October, 1964, the Boston office of the FBI informed the director of information that Flemmi was difficult to control and violent. The director was also told that an informant had stated to the FBI agents that Flemmi had told the informant that he wanted to kill Edward "Teddy" Deegan, allegedly because Deegan had murdered a friend or acquaintance of Flemmi after leaving the West End Social Club. On or about October 5, 1964, an informant advised H. Paul Rico, a special agent-in-charge, Boston office, that Vincent Flemmi was an extremely dangerous individual, that he suspected that Flemmi had committed several murders and that he wanted to be considered the best hit man in the area. In early 1965, the FBI learned that Raymond Patriarca wished to contact Vincent Flemmi to solve a particular problem. On or about March, 1965, an informant stated that a person under Patriarca, who was a kingpin in the Mafia, had said that a Boston hoodlum was giving orders to Flemmi to kill people. At the same time, Patriarca had told the informant that Flemmi had come to Providence to get the okay to kill Teddy Deegan. An unnamed person also advised the FBI, according to their own documents, on March 9, 1965, that James Flemmi and another known killer, Joseph Barboza, had contacted Patriarca and that they desired to get the okay to kill Deegan. According to this source, Flemmi said that Deegan is an arrogant, nasty sneak and should be killed. On March 10, 1965, an informant apparently advised special agent-in-charge Rico that James Flemmi had told the informant that Patriarca had put out the word for Deegan to be "hit" and that a dry run had already been made. He also said that a close associate of Deegan's had agreed to set Deegan up and that the murder would occur in the next few evenings because Deegan evidently pulled a gun and threatened some people in a restaurant in Revere, Massachusetts.

Despite this knowledge, neither H. Paul Rico nor any other employee or agent of the FBI took any steps to warn Teddy Deegan that his life was in danger. Nor did any FBI personnel take any steps to prevent Vincent Flemmi or any other person from murdering Deegan. On March 12, 1965, Teddy Deegan was gunned down in an alley in Chelsea, Massachusetts. On March 13, 1965, an informant advised Rico that James Flemmi had contacted him and told him that Deegan had been moved the previous evening to a finance office in Chelsea by Roy French, who was setting Deegan up, and that French shot Deegan. Flemmi also said that Joseph Martin and Ronnie Casessa came out the door and one of them fired into Deegan's body and that Joseph Barboza was also present.

After the murder of Deegan, the FBI concealed the information which it had and various individuals, including Joseph Salvati and Peter Limone, stood trial for the murder of Deegan and were convicted. Several of them were on death row for a considerable period of time and, before their sentences were committed to

life in prison, Salvati and Limone spent approximately thirty years in prison, even though the FBI knew that they had nothing to do with Deegan's murder.

Meanwhile, H. Paul Rico, who is now retired, remained a special agent of the FBI, principally or totally in the Boston office. Rico was in fact the founder and supervisor of the Boston FBI's OC squad (organized crime squad). Rico and others engaged in a substantial and ongoing coverup to conceal their prior knowledge of the threat to Deegan and their part in the devastating, misplaced prosecution of Salvati, Limone and the others. That story is not over. Undoubtedly, there is more information regarding the unnecessary death of Teddy Deegan.

The FBI is liable for the damages and losses suffered because of the acts perpetrated against Teddy Deegan and his family. Those acts were within the ambit of foreseeable risk created by the FBI's breach of its duty of care arising from its illicit and "special relationship" with its informants, including unnamed informants, James Flemmi, and Joseph Barboza. The FBI knew of the propensities of Flemmi, knew of his threats to Deegan and yet negligently and tortiously continued the relationship with both Barboza and Flemmi, granted them a shield to continue that relationship unabated and failed to warn or protect Deegan from violence at the hands of Flemmi, Barboza and others. This direct negligence on the part of the FBI substantially contributed to the wrongful death of Teddy Deegan, the losses which his children have endured and the pain and suffering of Teddy Deegan.

The claimants submit that the tortious and wrongful acts and omissions of former agents, H. Paul Rico, John Connolly, and John Morris, as well as many others, caused the wrongful death and physical injury of Teddy Deegan and gave rise to the loss by Deegan's daughters of their father's love, companionship, affection, support and other elements of a wrongful death claim. They also experienced extreme emotional distress as a result thereof.

**Response No. 10** (Personal Injury and Wrongful Death)

As a result of the tortious and wrongful acts and omissions of the FBI as summarized above, each of the individuals named claimants suffered serious personal injury as follows:

1. Loss of parental consortium, society and companionship of Yvonne Gioka and Catherine Patterson;
2. As young children, Catherine and Yvonne were violently deprived of the love, guidance and support of their father. They experienced extreme emotional distress, trauma and mental suffering and anguish;
3. The decedent of Catherine Patterson and Yvonne Gioka, Edward "Teddy" Deegan, suffered wrongful death and extreme emotional distress, psychic trauma and mental suffering and anguish.

**Response No. 11** (Witnesses)

1. H. Paul Rico (Florida);
2. Vincent Flemmi (address unknown);
3. Stephen Flemmi (incarcerated);
4. John Connolly (incarcerated);
5. Dennis Condon (address unknown);
6. Agents and personnel at FBI – Boston (1964-present);
7. Agents and personnel at FBI headquarters (1964-present);
8. Peter Limone (address unknown);
9. Domenic Salvati (address unknown);
10. Private investigators;
11. Various public and private records keepers;
12. All persons identified in Judge Wolf's opinion in United States v. Salemme;
13. Catherine (Deegan) Patterson;
14. Yvonne (Deegan) Gioka
15. All persons identified in Judge Hinkle's opinion in Commonwealth v. Peter J. Limone.