UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CATHERINE DEEGAN PATTERSON, )
Individually and as she is the )
Administratrix of the Estate of )
Edward "Teddy" Deegan, )
and YVONNE DEEGAN GIOKA, )     CIVIL ACTION NO. 04-11817 JLT
        Plaintiffs, )
 )
v. )
 )
UNITED STATES OF AMERICA )
and DENNIS CONDON )
        Defendants )

## OPPOSITION OF PLAINTIFFS TO THE UNITED STATES MOTION TO DISMISS

Plaintiffs Catherine Deegan Patterson, individually and as Administratrix of the Deegan Estate and Yvonne Deegan Gioka, individually, hereby oppose the motion of the United States to dismiss the complaint. The sole basis for the motion to dismiss is that the administrative claim was purportedly not presented to the United States within two years of accrual of the action, as required under the Federal Torts Claim Act, 28 USC §2401(b) and that the claims are therefore barred. Plaintiffs reject the position of the United States and ask that this Court deny the motion to dismiss for the reasons set forth below.

## INTRODUCTION

Plaintiffs Catherine Deegan Patterson and Yvonne Deegan Gioka are the natural children of Edward "Teddy" Deegan who was murdered in Chelsea in March, 1965. As the defendant must admit and freely admits, four individuals, including Peter J. Limone, Joseph Salvati, were convicted and imprisoned for Deegan's murder. At the time of Mr. Deegan's murder, Catherine and Yvonne were ten and eleven years old

1

respectively. Because of the notoriety of the murder and subsequent events, their mother changed their names and they were adopted by their stepfather. **Exhibit A**, Affidavit of Catherine Deegan Patterson. **Exhibit B**, Affidavit of Yvonne Deegan Gioka. After that, their mother protected them from discussion of the Deegan murder.

For more than thirty-five years, the FBI concealed its role in the death of Edward "Teddy" Deegan. For the first time in late 2000 and early 2001, information about that involvement surfaced. Reports surfaced in an investigation into FBI corruption to the effect that the FBI may have known about the plans of underworld figures to murder Deegan before it happened and did nothing to stop it. These facts form the basis of the plaintiffs' claims here.

It is undisputed that the FBI continually denied any involvement in the Deegan matter until documents to the contrary were released. By the admission of the United States, those documents were not released to investigators until late 2000 and early 2001, when some publicity was given to this information.

On January 27, 2003, Richard Deegan, representing himself as the Administrator of the Estate of Edward "Teddy" Deegan, filed a timely notice under the Federal Torts Claim Act of a claim for the wrongful death of Teddy Deegan. A copy of that notice is attached hereto as **Exhibit C**. Richard Deegan stated in that notice that he was in fact the Administrator of the Deegan Estate. In its memorandum in support of its motion to dismiss, the United States has admitted receiving that administrative claim. See United States Memorandum at page 2. However, the United States says that the claim was later denied because Mr. Deegan was not a duly appointed executor (sic). See United States Memorandum, at page 2, n. 2. Subsequently, Catherine Deegan Patterson was named the Administrator of the Estate and submitted a new notice on December 5, 2003. In that notice, she and her sister, Yvonne, asserted both a wrongful death claim

2

and individual claims for emotional distress. Plaintiffs submit that the notices, individually or collectively, have complied with the requirements of the statute and that the motion to dismiss should therefore be denied.

## ARGUMENT

As the United States admits, the First Circuit has announced and follows a standard that a plaintiff has two years from the date of accrual of the claim to give notice to the appropriate agency. In Skwira v. United States, 344 F.3d 64 (1st Cir., 2003) and McIntyre v. United States, 367 F.3d 38 (1st Cir., 2004), the court restated its earlier decision that the accrual date is not the same as the date of injury. In McIntyre, the court noted that accrual does not occur when a person has a hint, suspicion or rumor of a claim, but some firm knowledge of the fact of injury and the causal connection with the government's action. Here, the accrual of the wrongful death action did not occur until 2001 and the plaintiffs submit that the notice given by Richard Deegan on January 27, 2001, was timely from this perspective. The plaintiffs adopt that notice. **Under the applicable law, that notice was sufficient to satisfy the requirements of the statute.**

The United States actually makes the argument at Memorandum pages 8 and 9 that the plaintiffs should have investigated the government's involvement of the murder of their father as early as 1983 when information apparently surfaced in news reports as to whether the correct individuals were imprisoned for Deegan's murder. Of course, the government does not even pretend to argue that those reports implicated the FBI. The United States also makes a half-hearted effort at suggesting that Judge Wolf's opinion in United States v. Salemme, issued on September 15, 1999, regarding "the questionable relationship between the FBI and certain informants," should have triggered an investigation by the plaintiffs. The government fails to explain how any layperson, even if the person knew about Judge Wolf's opinion, could possibly leap

3

from the involvement of the FBI with informants, including Joseph Barboza, to a reasonable suspicion that FBI wrongdoing was involved in Mr. Deegan's death. The focus of Judge Wolf's investigation and decision was the connection of the FBI with James "Whitey" Bulger and Stephen Flemmi, not Barboza. As the First Circuit has stated, knowledge of the status of an informant further FBI is not enough to lead to suspicion of wrongdoing. McIntyre, supra, at 51.

Ultimately, the United States argues that the information contained in Judge Hinkle's decision of January 8, 2001 in the Limone case, placed the plaintiffs on notice and constituted accrual of the cause of action. Memorandum of the United States, at page 12. This decision, although addressed to the innocence of Mr. Limone, did discuss the possible FBI knowledge of the plan to murder Deegan.

However, neither Catherine Deegan Patterson or Yvonne Gioka had any knowledge of the information contained in Judge Hinkle's opinion from any source at that time. For the first time in February of 2001, Ms. Patterson received sketchy information from a friend about the latest developments. At that time, Patterson learned that the FBI may have had an opportunity to warn her father or to intervene to prevent his death. See Affidavit of Catherine Deegan Patterson attached hereto as **Exhibit A**. Of course, she had no knowledge as to whether she may have a claim against the government at that time, particularly in light of the many years of the FBI's denial of any wrongdoing in all of its FBI informant cases and, particularly, in the Deegan murder. Thus, at the absolute earliest, the action accrued as to Catherine Deegan Patterson in February, 2001. Ms. Patterson, who lived in New Hampshire, has stated that she was not aware of the publicity regarding this such new information. She did not read the Boston media or watch any programs on television about these new disclosures. See **Exhibit A** at paragraph 7.

4

Nor did Ms. Patterson communicate to her sister, Yvonne Deegan Gioka, anything about the new developments at any time in 2001. Yvonne Gioka has lived outside of Massachusetts at all times since 1986. As she has stated in her attached affidavit, **Exhibit B**, she knew nothing about any FBI involvement in her father's death until some time in 2002 when her sister, Catherine, informed her. Catherine's principal reason for not informing her earlier was Yvonne's serious medical condition and disability. Yvonne Gioka was near death on several occasions in the years prior to 2002 and she experienced a stroke in 2002. According to the social security administration, she has been disabled for many years. It is therefore clear that any claim of Yvonne Gioka related to her father's death did not accrue until sometime in 2002. For this reason, at a minimum, her claim for emotional distress, filed on December 5, 2003, as the United States acknowledges, was timely and a motion to dismiss should be denied as to her claim. Her claim is attached to the Memorandum of the United States at Tab 1.

The law does not impute, without more, the knowledge of newspaper and other media accounts to potential plaintiffs under the Federal Torts Claim Act. As the First Circuit has stated in McIntyre, supra, where there are several plaintiffs in a case who do not live in the same geographical area and the public notice is restricted to those areas, the Court considers geography, certainly where notice is based on local television and press coverage. Yvonne Gioka had no knowledge of the Boston media since she has lived outside of Massachusetts and knowledge of reports by Boston media in 2001 cannot be attributed to her. Although she has a dim memory of seeing a CNN report about Joseph Salvati, one of the convicted murderers of Teddy Deegan, she cannot recall when she saw it and learned nothing at that time about any FBI involvement. She could not reasonably be expected to even have a suspicion of such involvement. Yvonne Gioka had minimal family ties to the Deegan side of the family and never

discussed Teddy Deegan's death. As noted above, Yvonne and her sister were protected from discussions of their father's death since their youngest years. **Exhibits A, B**. Ms. Gioka heard nothing from the Deegan family about the disclosures of FBI involvement until her sister informed her sometime in 2002. Long after that initial disclosure, Ms. Gioka reviewed newspaper articles from the Boston area which, in some instances, predated 2002, regarding the FBI involvement in her father's death. Her sister, Catherine, has stated that she did not tell Yvonne because of her serious health problems. As a matter of law, knowledge of publicity held by one family member, such as Catherine Deegan Patterson in February, 2001, cannot be imputed to another family member such as Yvonne Gioka. The "knew or should have known question" must be asked individually. McIntyre, supra, at 62. It is unreasonable to assume or accept that Yvonne Gioka had notice of FBI involvement in her father's death sufficient to trigger a requirement of investigation prior to 2002. Therefore, her individual claim is timely.

The date of filing notice of the wrongful death claim with United States is January 27, 2003. That date is within two years of the accrual of the cause of action. As the United States has admitted, it received Richard Deegan's notice on that day. The notice, **Exhibit C**, clearly states a claim for wrongful death arising out of the misconduct of the FBI. The information provided by Deegan on that day placed the FBI and the United States government on notice of a tort claim. As the First Circuit has held, the burden of filing a notice under the Federal Torts Claim Act is "minimal". Santiago-Ramirez v. Secretary of State of Def., 984 F.2d 16, 19 (1st Cir., 1993). Under that case, the notice provision is met if sufficient information is provided to the agency to allow it to investigate the claim and the amount of damages sought. Santiago-Ramirez, supra, cited at Skwira v. US, 344 F.3d 64, 70 (1st Cir. 2003). The notice may even be provided upon a letter form, rather than on the claim form specified, that is, form 95. Santiago-

6

Ramirez, supra, at 19. The First Circuit observed that the burden on filing a notice is minimal and that the requirements are approached leniently. **Importantly, the notice need not contain or state enough information for negotiations to begin, but only to allow the agency to investigate the claim. Id. Any other requirement exceeds the mandate of the statute.**

Here, Richard Deegan clearly gave notice to the FBI and the United States of a wrongful death claim for the death of Edward "Teddy" Deegan on January 27, 2003. He also represented that he was the Administrator of the Estate. Given the lenient approach of the First Circuit to the notice provision, this Court should hold that that notice was in compliance with the statute. Thus, even if the notice of Catherine Deegan Patterson as Administratrix of the Edward Deegan Estate filed on December 5, 2003, is considered late, the notice of Richard Deegan, which notice Catherine Deegan Patterson has adopted, satisfies the notice provision of the statute.

The United States has stated that Richard Deegan was not a "duly appointed" executor. However, this conclusion appears to be incorrect. Mr. Deegan was apparently the Voluntary Administrator of the Estate of Edward Deegan approved by the Probate Court on 1/19/02. See **Exhibit D**.

Even if, as the government says, Richard Deegan was not the legal representative of the Deegan Estate, the notice given by Deegan is adequate. The key issue is notice. If the notice is flawed, the lenient approach to notice filing in the First Circuit mandates overlooking the flaws. Here, Catherine Deegan Patterson, who is indisputably the Administratrix of her father's Estate, affirms and adopts Richard Deegan's notice to the FBI and the United States on January 27, 2003 and asks this Court to affirm the validity of that notice.

If the Richard Deegan submittal to the United States is considered adequate notice under the statute, as it should be, this Court should also find that the notice is timely. The notice was filed two years and nineteen days after Judge Hinkle's decision. Apparently, Mr. Deegan did not learn the new information until January 31, 2001. In ¶ 8 of his administrative claim, he says that the claim is based on information made public "on or about January 31, 2001. See **Exhibit D**. Plaintiffs request the Court to credit that statement and to find Deegan's notice timely. A twenty-three-day delay in Richard Deegan's learning of the new facts revealed in Judge Hinkle's January 8 decision is reasonable. Mr. Deegan resided at the time at Cape Cod, distant from the Boston newspapers. For this reason, he should not be held to knowledge of the decision by Judge Hinkle immediately after that decision. It is reasonable to assume that he did not understand the implications of any recently disclosed information about the FBI involvement in Teddy Deegan's death until the end of January, 2001. The accrual of a cause of action under the Tort Claims Act occurs when a claimant knows or has reason to know that he has been injured by an act or omission by the government. Skwira v. United States, 344 F.3d 64, 77 (2003). As noted above, Catherine Deegan Patterson, who lived in New Hampshire, learned of these matters only in February, 2001 through a friend. Given the fact that the government alleges notice to the plaintiffs here through media activity rather than through direct release of information to the plaintiffs, the assumption that there was a delay in processing this information on the part of the Deegans is fair and reasonable. Furthermore, a delay of a mere three weeks is perfectly understandable. Therefore, this Court should hold that the two-year period for filing notice of any potential claim against the FBI was triggered no earlier than January 31, 2001. **For this reason, the notice given by Richard Deegan to the United States and the FBI should be found to be timely and sufficient.**

The plaintiffs have been unable because of the press of time to obtain any affidavit or other statement under oath from Mr. Deegan to confirm the statement in his administrative claim as to when he came to know of the FBI involvement in the death of his brother, Teddy Deegan. If this Court is unwilling to take judicial notice or credit Mr. Deegan's statement in his administrative claim submission that he did not have the information upon which he based his claim until January 31, 2001, and that therefore the claim form which Mr. Deegan filed on January 27, 2003, was timely, plaintiffs ask that the Court allow the plaintiffs to supplement this opposition with statements under oath by Mr. Deegan or others to support plaintiffs' position and that the Court allow the plaintiffs up to and including February 22, 2005, to submit such materials. Plaintiffs have today filed a motion for leave to file such testimonial materials.

Even if this court were to find that Mr. Deegan's notice of the wrongful death claim for the Deegan estate was untimely, which it should not do, the claim of Yvonne Deegan Gioka individually for emotional distress is clearly timely. That claim was filed on December 5, 2003. As already explained, Ms. Gioka had no knowledge of the FBI's involvement in her father's death until at least the year 2002 partly because she lived outside of Massachusetts for many years before that and at that time. Therefore, at an absolute minimum, Ms. Gioka's claim is timely and the motion to dismiss as to that claim must be DENIED.

### REQUEST FOR ORAL ARGUMENT

Plaintiffs herein request that this Court hear oral argument on the Plaintiffs' Opposition to the United States' Motion to Dismiss.

                                                Respectfully submitted,
                                                Plaintiffs,
                                                By their attorneys,

                                                _____
                                                Neil Rossman, BBO#430620

                                                _____
                                                Paul F. Denver, BBO#120755
                                                Rossman & Rossman
                                                Marketplace Center – North
                                                200 State Street
                                                Boston, MA  02109
                                                (617) 439-9559

DATED:  January 7, 2005