UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CATHERINE DEEGAN PATTERSON, | ) | |
| Individually and as she is the | ) | |
| Administratrix of the Estate of | ) | |
| Edward "Teddy" Deegan, | ) | |
| and YVONNE DEEGAN GIOKA, | ) | CIVIL ACTION NO. 04-11817 JLT |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| and DENNIS CONDON | ) | |
| Defendants | ) | |
| | ) | |

**PLAINTIFFS' SUBMISSION OF AFFIDAVIT OF RICHARD DEEGAN**

Now come the plaintiffs and hereby submit an affidavit of Richard Deegan in support of their opposition to the Motion to Dismiss of the United States.

As grounds for this submission, the plaintiffs say as follows:

The Defendant United States has moved to dismiss on the grounds that the notice provided to the United States regarding the federal torts claim in question was received by the United States more than two years after the cause of action accrued. The government has argued in its motion to dismiss that the accrual occurred at the latest on January 8, 2001 when Massachusetts Superior Court Judge Hinkle issued a decision which referenced the fact that the F.B.I. had known of threats to the life of Teddy Deegan before Mr. Deegan was murdered on March 12, 1965. The government

1

argues that, at the latest, any notice should have been provided to the government within two years of January 8, 2001.

Richard Deegan, the brother of Teddy Deegan, provided notice of claim to the federal government on January 27, 2003, two years and nineteen days after Judge Hinkle's decision. The plaintiffs in this action have adopted Mr. Deegan's notice to the federal government. It is the position of the plaintiffs that that notice was timely.

In support of this position, the plaintiffs now submit an affidavit recently executed by Richard Deegan. Please see **Exhibit A**. Mr. Deegan has stated in his affidavit that he did not know or learn of any involvement of the F.B.I. in the murder of his brother Teddy Deegan until on or about January 31, 2001, when a friend informed him that the F.B.I. knew of threats to Teddy Deegan by underworld figures several days before his murder, but did nothing protect or warn Teddy Deegan. Please see **Exhibit A**, paragraphs 4, 5 and 6. At the time, Mr. Deegan was retired and was living in Hyannis, MA. He did not regularly follow court proceedings or read Boston newspapers and he did not speak with other members of the Deegan family about these matters. **Exhibit A**, paragraph 8.

It is clear, then, that Mr. Deegan neither knew nor reasonably should have known about the vital F.B.I. connection to Teddy Deegan's death before the very end of January, 2001. Since he filed his notice of claim on January 27, 2003, notice was provided to the U.S. government within the applicable two years and the claim must be considered timely. Therefore, the motion to dismiss should be denied.

The defendant United States will undoubtedly argue, as it did in its Motion to Dismiss and in its other pleadings, that the test of when the individual knew or should have known about the basis for the tort claim is "objective" and that what Richard Deegan knew or did not know is irrelevant to determine the date of accrual. However, the government's position is overstated. In general, an "objective" standard is used to determine when individuals should have known enough to pursue a tort claim under the Federal Tort Claims Act. However, in the lead case on this point, *McIntyre vs. U.S., 367F.3d 38(1st Cir., 2004)*, the Court noted that accrual does not occur when a person has a hint, suspicion or a rumor of a claim, but some firm knowledge of the fact of injury and a causal connection to the government. The Court also noted that, where plaintiffs do not live in the same geographical area, and where public notice is restricted to a certain geography, including on local television, the court will consider those matters in determining whether an individual knew or should have known information which would lead the individual to pursue a claim. Plaintiffs have documented in their original <u>Opposition of Plaintiffs to the U.S.' Motion To Dismiss,</u> at 5-7, that Catherine Patterson and Yvonne Gioka had no knowledge of the Boston media and did not have knowledge of any other media which would have given them information about the F.B.I.'s prior knowledge of threats to Teddy Deegan's life. Nor should Richard Deegan, who lived in retirement in Hyannis in 2001 be considered to have been placed on constructive notice of these events before January 27, 2001.

No one except a person deeply involved in the legal community in Boston would have known in early January or late December about the information then coming to

light thirty-six years after Teddy Deegan's death regarding the F.B.I.'s prior knowledge of threats to his life. Indeed, the federal government did not reveal that information until forced to do so in late December, 2000. The federal government had failed and evidently refused to provide that information – and other pertinent information that it had – even though four innocent men had gone to jail more than thirty years earlier for the death of Teddy Deegan and the F.B.I. had known who the perpetrator of the murder was. In short, the F.B.I. **did everything in its power to conceal its involvement in Deegan's murder** and only revealed this critical information when forced to disclose documents in late December, 2000. Judge Hinkle apparently then relied on these documents in issuing her decision on January 8, 2001, exonerating Peter Limone for Teddy Deegan's murder.

It is ironic and shameful that the government now claims that Richard Deegan's notice given on January 27, 2003 is late even though it was received two years and a mere 19 days after Judge Hinkle's decision. Clearly, as a general matter, a nineteen day delay in Deegan's hearing about this new information is perfectly reasonable, given his location and retired status. It is absurd to think that he would have been highly involved in pursuing news about these issues thirty-six years after his brother's death. This Court should credit the fact that Deegan actually received this information at the end of January, 2001 and should not find him in constructive knowledge prior to that date. **Therefore, Court should find that the cause of action accrued on or about January 31, 2001 and that the notice given by Richard Deegan on January 27, 2003 was timely.**

The plaintiffs also anticipate that the defendant United States will argue, as it has before, that Deegan's notice is a nullity because he was a voluntary administrator of Teddy Deegan's estate. In support of that argument, which is set forth in the United States' Opposition to Plaintiffs' Motion for Leave to Submit Additional Evidentiary Materials, the government cites Marco v. Green 415 Mass 732, 615 N.E.2d 928(1993). That case holds that a voluntary administrator cannot file a wrongful death lawsuit and may not be capable of compromising a claim. However, Deegan was not engaged in either action. He and his lawyer were providing the government with notice of the tort claim. As the plaintiffs have demonstrated in detail in their Opposition to the United States Motion to Dismiss, pages 6-9, the burden of filing a notice under the federal tort claims act is "minimal", Santiago-Ramirez v. Secretary of State of Def., 984F 2ᵈ 16, 19(1ˢᵗ Cir. 1993). The notice issue is approached leniently by the courts. The purpose of the notice is not to permit the government to negotiate, but only to allow the government to investigate the claim. Here, Deegan's notice was not only timely, but allowed the U.S. to investigate the claim. Id., at 19.

Of course, it is doubtful that the government needed any information from Richard Deegan before investigating to determine its liability in Teddy Deegan's murder. The government knew for many years before 2001 that F.B.I. agents were aware of threats to Teddy Deegan's life, yet those agents did nothing to stop his murder. **The government actively covered up this information for over three decades.** In these circumstances, it is preposterous for the government to complain about late

notice as inhibiting its "investigation". The Deegan notice obviously did not prejudice the government.

The notice to the United States government of this tort claim was provided within two years of the accrual of the cause of action and was proper. For these reasons, this court should **DENY** the Motion to Dismiss of the United States and allow this case to go forward.

Respectfully submitted,
Plaintiffs,
By their attorneys,

Neil Rossman, BBO#430620

Paul F. Denver, BBO#120755
Rossman & Rossman
Marketplace Center – North
200 State Street
Boston, MA 02109
(617) 439-9559

DATED: March 22, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CATHERINE DEEGAN PATTERSON,  )
Individually and as she is the           )
Administratrix of the Estate of          )
Edward "Teddy" Deegan,               )
and YVONNE DEEGAN GIOKA,       )          CIVIL ACTION NO. 04-11817 JLT
                    Plaintiffs,                )
                                                  )
v.                                                 )
                                                  )
UNITED STATES OF AMERICA        )
and DENNIS CONDON                    )
                    Defendants              )
                                                  )

# EXHIBIT A

## AFFIDAVIT OF RICHARD DEEGAN

1.  I, Richard P. Deegan, reside at 39 Redwood Lane in Hyannis, Massachusetts. I am the younger brother of Edward "Teddy" Deegan.

2.  All statements made in this affidavit are matters of personal knowledge unless stated otherwise.

3.  After the death of "Teddy" Deegan, I knew that a number of individuals had been tried and found guilty of his death. They included Peter Limone and Joseph Salvati. I did not follow the publicity regarding those cases after the individuals were convicted.

4.  I moved to Hyannis, Massachusetts, from the Boston area in 1996. I did not read the Boston newspapers regularly and did not see any televisions programs suggesting any involvement of the FBI in my brother's death. In January, 2001, I was

1

retired. I had little contact with other members of the Deegan family and did not have any information about any investigation into the wrongful convictions of the individuals who had gone to prison for Teddy's death.

5. On or about January 31, 2001, I received a phone call from a friend who informed me about Teddy's murder. He told me that Teddy was not murdered by the imprisoned individuals, but by an informant of the FBI. He also informed me for the first time that the FBI knew or may have known about plans of underworld figures to kill Teddy before his murder, but the FBI did nothing about it. This was my first knowledge that the FBI had anything to do with my brother's death.

6. Although I know now that there was publicity in late December and early January of 2001 in the Boston area about this FBI involvement in Teddy's death, I did not learn of that publicity at the time from any source until about January 31, 2001. The friend who informed me of these developments had apparently learned of them through publicity.

7. I became the voluntary administrator of Edward Teddy Deegan's Estate in January, 2002, slightly less than a year after I learned of this incident. I then authorized Attorney Anthony Cardinale to file a claim with the federal government as a result of the FBI's involvement in Teddy's death. To the best of my knowledge, that notice was filed on January 27, 2001. That date was several days short of two years after I heard for the first time about the involvement of the FBI in Teddy's death.

8. Given the fact that I had moved from the Boston area to Hyannis many years before January of 2001, that I did not regularly read the Boston newspapers and that I

2

did not follow court proceedings or even hear about them regarding the efforts of Peter

Limone and Joseph Salvati and others to be released from prison, I could not have

known of the FBI involvement before I was informed of it on or about January 31, 2001.

Signed under the pains and penalties of perjury, this __*11*__ day of March, 2005.

Richard P. Deegan

3

## CERTIFICATE OF SERVICE

I, Paul F. Denver, do certify that on this 22nd day of March, 2005, the attached Plaintiffs' Submission of Affidavit of Richard Deegan was forwarded to Bridget Bailey Lipscomb, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, Benjamin Franklin Station, P.O. Box 888, Washington, D.C. 20044, attorneys for the United States of America, by first class mail, postage prepaid.

*Paul F. Denver*

Paul F. Denver, BBO#120755
Rossman & Rossman
Marketplace Center – North
200 State Street
Boston, MA  02109
(617) 439-9559