UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CATHERINE DEEGAN PATTERSON, Individually and as she is the Administratrix of the Estate of Edward "Teddy" Deegan, and YVONNE DEEGAN GIOKA, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, and DENNIS CONDON, <br><br> Defendants. | Civil Action No. 04-11817-JLT |

MEMORANDUM

June 8, 2005

TAURO, J.

      This is a wrongful death suit brought under the Federal Tort Claims Act ("FTCA")[1] by Catherine Deegan Patterson and Yvonne Deegan Gioka, the daughters of Edward "Teddy" Deegan. Plaintiffs claim that the FBI and former agent Dennis Condon negligently caused, or failed to prevent, the murder of Teddy Deegan in 1965. Defendants argue that Plaintiffs' claims are barred by the FTCA's statute of limitations.

---

[1] 28 U.S.C. §§ 1346, 2671 *et seq.*

**Background**

On March 12, 1965, FBI informants Vincent James Flemmi[2] and Joseph Barboza murdered Teddy Deegan in Chelsea, Massachusetts.[3] Before the murder, FBI agents had actual knowledge that Flemmi planned to kill Deegan. The FBI agents, however, did not warn Deegan, and failed to take any actions to control Flemmi or to prevent Deegan's murder. Other individuals, including Peter Limone and Joseph Salvati, were wrongly convicted of the murder. These men spent decades in prison. For over thirty years, the FBI concealed its relationship with Flemmi and its knowledge that Flemmi and Barboza murdered Teddy Deegan. The truth eventually came to light.

On December 21, 2000, the Boston Globe published an article entitled, "FBI reportedly hid key evidence; Documents show it knew of Deegan slaying plot in '65." The article began:

> Secret documents recently discovered in a Justice Department probe of FBI corruption appear to show that the bureau knew not only that the wrong men were convicted of a 1965 gangland murder, but also that agents were told about the plot two days before it happened and apparently did nothing to stop it.[4]

Defendant Dennis Condon was one of the FBI agents who allegedly knew that Flemmi planned to murder Deegan. In early January of 2001, several other New England newspapers published

---

[2]Vincent James Flemmi is the brother of Stephen "The Rifleman" Flemmi. Ralph Ranalli, FBI Reportedly Hid Key Evidence, Boston Globe, Dec. 21, 2000, at B1.

[3]Compl. ¶¶ 10, 13. Unless otherwise noted, the background facts are drawn from Plaintiffs' complaint. This court assumes, for the purposes of this motion, that Plaintiffs' allegations are true.

[4]Ralph Ranalli, FBI Reportedly Hid Key Evidence, Boston Globe, Dec. 21, 2000, at B1.

these explosive revelations.[5]

Based on this newly discovered evidence, Massachusetts Superior Court Justice Margaret Hinkle vacated Peter Limone's conviction.[6]  On January 8, 2001, Justice Hinkle issued an unpublished opinion discussing the internal FBI documents showing the Bureau's knowledge of the plot to murder Deegan.[7]  This decision immediately generated extensive regional and national media coverage.[8]

On January 18, 2001, Justice Hinkle also vacated the conviction of Joseph Salvati.[9]  Salvati had been convicted along with Peter Limone for the murder of Teddy Deegan.  This decision also received extensive national media attention.[10]

---

[5] E.g., J. M. Lawrence, Lawyer Urges Judge to Free Man Jailed in 1965 Mob Killing, Boston Herald, Jan. 2, 2001, at 12; Jonathan Wells, Another Day in Court; DA to Seek New Trials for Convicts in Mob Hit, Boston Herald, Jan. 4, 2001, at 4; Four Convicted in Mob Killing Could Be Cleared, Prosecutor Examining Fresh Evidence; Men May Have Been Framed, The Hartford Courant, Jan. 4, 2001, at A7; New Trial Ordered for Man Who Served 32 Years for Murder, Providence J., Jan. 6, 2001, at 5A.

[6] Commonwealth v. Limone, Nos. 32367, 32369, 32370, 2001 WL 30494 (Mass. Super. Jan. 8, 2001).

[7] See id. at *3-4.

[8] E.g., John Bacon, Freedom Means Family After Three Decades, USA Today, Jan. 8, 2001, at A3; Convicted Killer Freed, Orlando Sentinel, Jan. 8, 2001, at A11; Massachusetts Man Jailed for 32 Years is Freed in Murder Case, Miami Herald, Jan. 6, 2001, at 22A; Murder Conviction Tossed in 60's Case, N.Y. Times, Jan. 7, 2001, § 1 (Magazine), at 15; See United States' Reply to Pls.' Opp'n to Mot. Dismiss Exs. 1, 2.

[9] National News Briefs; Conviction Thrown Out in Mob Murder Case, N.Y. Times, Jan. 19, 2001, at A21.

[10] E.g., Martin Finucane, Judge Vacates Man's Murder Conviction, Associated Press, Jan. 18, 2001; Carey Goldberg, An Innocent Man Goes Free 33 Years After Conviction, N.Y. Times, Feb. 2, 2001, at A12; Charges Nixed for 2 Claiming FBI Frame-Up, USA Today, Jan. 31, 2001, at A5; Duo's Charges Dropped in '65 Underworld Killing, Houston Chronicle, Jan. 31, 2001, at

On January 27, 2003, Richard Deegan, Teddy Deegan's brother, filed a notice with the FBI of his claim for wrongful death under the FTCA.[11] Richard Deegan filed notice of the claim purportedly acting on behalf of the Deegan Estate. Richard Deegan, however, was a voluntary administrator.[12] As such, he had no authority under Massachusetts law to bring or settle a wrongful death suit.[13] The Department of Justice denied his claim, and apparently he did not pursue it further.[14]

Subsequently, Catherine Deegan Patterson was appointed Administratrix of the Deegan Estate. On December 5, 2003, Plaintiffs Catherine Deegan Patterson and Yvonne Deegan Gioka, Teddy Deegan's daughters, filed notice of their claims with the FBI for wrongful death and for emotional distress. Plaintiffs have sued both in their individual capacities and on behalf of the Deegan Estate. The United States and former FBI agent Dennis Condon have moved to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

A5; Injustice, St. Petersburg Times (Florida), Feb. 7, 2001, at 12A; Innocent Man Goes Free 33 Years After Conviction, Charleston Gazette (West Virginia), Feb. 4, 2001, at 10A; Nation in Brief/Massachusetts; Charges Dropped in 1965 Mob Killing, L.A. Times, Jan. 31, 2001, at A5; News in Brief, The Herald-Sun (Durham, NC) Jan. 31, 2001, at A3.

[11] Opp'n of Pls. to United States' Mot. to Dismiss Ex. C.

[12] Id.

[13] See Marco v. Green, 615 N.E.2d 928, 932 (Mass. 1993) ("In sum, we hold that a voluntary administratrix acting pursuant to § 16 possesses no authority to bring a wrongful death claim, or to settle one.").

[14] See United States' Reply to Pls.' Opp'n to Mot. to Dismiss Ex. 4.

**Discussion**

In considering Defendants' motion to dismiss, this court must "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences."[15] When faced with a Rule 12(b)(1) motion to dismiss, however, a district court "may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations."[16] To determine jurisdiction, this court will consider the exhibits attached to the pleadings and the evidentiary materials submitted by the parties. In doing so, this court does not convert the motion to dismiss into a motion for summary judgment.[17]

Defendants argue that this court lacks subject matter jurisdiction because Plaintiffs did not file an administrative notice of their claims within two years of the accrual of the action, as required by 28 U.S.C. § 2401(b). Defendants contend that Plaintiffs' cause of action accrued, at the very latest, on or about January 8, 2001—the day Justice Hinkle issued her opinion vacating Peter Limone's conviction in light of the newly discovered internal FBI memoranda. Plaintiffs filed notice of their claims with the FBI on December 5, 2003, almost three years later.

Plaintiffs argue that Catherine Deegan Patterson knew nothing of Justice Hinkle's decisions or the internal FBI documents until she "received sketchy information from a friend" in February of 2001.[18] Ms. Patterson lives in New Hampshire, and she "did not read the Boston

---

[15]Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

[16]Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37-38 (1st Cir. 2000).

[17]Rakes v. United States, 352 F. Supp. 2d 47, 70 (D. Mass. 2005).

[18]Opp'n of Pls. to United States' Mot. to Dismiss at 4.

media or watch any programs on television about these new disclosures."[19]  Throughout the relevant time period, Yvonne Deegan Gioka was living in Georgia.[20]  Ms. Gioka became physically disabled as a result of a car accident in 1996.[21]  She also has Lyme disease, chronic fatigue syndrome, and she suffered a stroke in 2002.[22]  Ms. Gioka had no actual knowledge of the FBI's involvement in her father's murder until her sister informed her of the latest developments in the summer of 2002.[23]

Because the FTCA is a waiver of sovereign immunity, the statute must be strictly construed.[24]  The FTCA provides, "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."[25]  The First Circuit has held that a claim accrues under the FTCA "when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action."[26]  Furthermore, "[t]he test for whether a plaintiff should have

---

[19]Id.

[20]Aff. of Yvonne Deegan Gioka ¶ 5.

[21]Id. ¶ 9.

[22]Id.

[23]Id. ¶ 10.

[24]Skwira v. United States, 344 F.3d 64, 73 (1st Cir. 2003); Rakes v. United States, 352 F. Supp. 2d 47, 70 (D. Mass. 2005).

[25]28 U.S.C. § 2401(b).

[26]McIntyre v. United States, 367 F.3d 38, 52 (1st Cir. 2004) (quoting Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)) (quotations omitted).

discovered necessary facts is an *objective* one."[27]  A determination as to when a cause of action accrues under this "discovery rule" involves a two-step inquiry.

First, this court must determine "whether sufficient facts were available to provoke a reasonable person in the plaintiff's circumstances to inquire or investigate further" with respect to the factual basis for the cause of action.[28]  Once this duty to investigate is established, the plaintiff is deemed to have knowledge of what she would have discovered through a reasonably diligent investigation.[29]  Second, this court must determine "whether the plaintiff, if armed with the results of that investigation, would know enough to permit a reasonable person to believe that she had been injured and that there is a causal connection between the government and her injury."[30]  Where there are multiple plaintiffs, each plaintiff's circumstances must be considered individually.[31]

In her affidavit, Catherine Deegan Patterson admits that she learned, in February of 2001, that the FBI could have prevented her father's murder.[32]  At this time, a reasonable person in Ms. Patterson's circumstances would have been provoked to investigate further.  Had she done so, she would have discovered credible evidence of the following: (1) Vincent James Flemmi and Joseph Barboza murdered Teddy Deegan; (2) at the time, Flemmi was a FBI informant; (3) Flemmi's

---

[27] Id. (emphasis added).

[28] Id.

[29] Id.

[30] Id.

[31] Id. at 59.

[32] Aff. of Catherine Deegan Patterson ¶ 7.

relationship with the FBI helped him become a full-time assassin; (4) FBI agents knew of Flemmi's plans to kill Deegan before the murder occurred; and (5) FBI agents, including Dennis Condon, did nothing to prevent the murder. Every material fact alleged in Plaintiffs' complaint became public knowledge in late December of 2000 and early January of 2001.

Armed with the results of this hypothetical investigation, a reasonable person would have known enough to believe that she had been injured and that there was a causal connection between the Government and her injury. Yet Plaintiffs filed notice of their claims with the FBI on December 5, 2003, roughly two years and nine months after Ms. Patterson's claims accrued.

Plaintiff Yvonne Deegan Gioka, on the other hand, claims to have had no actual knowledge of the FBI's complicity in her father's murder until her sister informed her in the summer of 2002.[33] Ms. Gioka lived in Georgia, and she suffers from "severe physical problems."[34] Moreover, Ms. Gioka had "relatively little contact" with the Deegan side of the family.[35] Though the inquiry is an objective one, these circumstances must be considered in determining when Ms. Gioka reasonably should have discovered the facts of her case.[36]

On January 8, 2001, Superior Court Justice Margaret Hinkle issued her opinion vacating Peter Limone's conviction for the murder of Ms. Gioka's father. A reasonable person in Ms. Gioka's circumstances would have had a significant interest in this event. Justice Hinkle's opinion

---

[33] Aff. of Yvonne Deegan Gioka ¶ 10.

[34] Id. ¶ 9.

[35] Id. ¶ 6.

[36] McIntyre, 367 F.3d at 59-60.

specifically discussed the internal FBI documents, and her decision generated extensive national media coverage.[37]  For example, on January 8, 2001, Bryant Gumbel interviewed Peter Limone and his attorney, John Cavicchi, on CBS's "Early Show."  At one point during the interview, Mr. Gumbel asked, "What did the FBI documents reveal that led to this release?"  Mr. Cavicchi answered, "Well, the FBI documents reveal that two days before the murder took place, the FBI knew who the murderer was."[38]

On January 18, 2001, Justice Hinkle also vacated the conviction of Joseph Salvati.[39]  Salvati had been convicted along with Peter Limone for the murder of Plaintiffs' father.  This decision also received widespread media attention.[40]  On May 3, 2001, a Congressional committee investigating the Boston FBI office apologized to Mr. Salvati and his wife.[41]

Given her circumstances, Ms. Gioka cannot reasonably be expected to have read any specific Boston newspaper.  Where events, however, receive "widespread publicity, plaintiffs may be charged with knowledge of their occurrence."[42]  A reasonable person in Ms. Gioka's situation,

---

[37]See, e.g., newspapers cited supra note 8.

[38]United States' Reply to Pls.' Opp'n to Mot. to Dismiss Ex. 2.

[39]National News Briefs; Conviction Thrown Out in Mob Murder Case, N.Y. Times, Jan. 19, 2001, at A21.

[40]See, e.g., newspapers cited supra note 10.

[41]The FBI's Controversial Handling of Organized Crime Investigations in Boston: Hearing Before the House Gov't Reform Comm., 107th Cong. (2001) (statements of Rep. Christopher Shays); Ken Maguire, Panel Probing FBI Apologizes to Man Wrongly Jailed, Associated Press, May 3, 2001.

[42]McIntyre, 367 F.3d at 60 (quoting United Klans of Am. v. McGovern, 621 F.2d 152, 154 (5th Cir. 1980)).

would have discovered, within a reasonable period of time, that the persons convicted of her father's murder had been exonerated. At least some of the national media coverage surrounding these events should have come to her attention. Indeed, Ms. Gioka remembers seeing something about Joseph Salvati on CNN.[43] Although it is unclear when Ms. Gioka learned that Salvati and Limone had been exonerated, she should have discovered this fact before December 5, 2001—almost one year after Justice Hinkle's decisions.

Knowing that Limone and Salvati had been exonerated would provoke a reasonable person in Ms. Gioka's circumstances to inquire further into the reasons for Justice Hinkle's decisions. With reasonable diligence, she would have discovered the entire factual basis for her cause of action. And she would have known enough to believe that she had been injured and that there was a causal connection between the Government and her injury.

Plaintiffs argue, however, that the filing of their administrative notice should relate back to January 27, 2003—the date that Plaintiffs' uncle, Richard Deegan, filed notice of his claim. In seeking to adopt Richard Deegan's filing date, Plaintiffs point out that the burden of filing a notice under the FTCA is "minimal."[44] "[A]s long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement."[45]

Minimal as the notice-of-claim requirement may be, this court is unaware of any case in

---

[43] Aff. of Yvonne Deegan Gioka ¶ 8.

[44] Opp'n of Pls. to United States' Mot. to Dismiss at 6.

[45] Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 40 (1st Cir. 2000).

which a plaintiff has been permitted to adopt a different claimant's filing date. Perhaps the closest case is *Williams v. United States*.[46] In *Williams*, the Fifth Circuit held that minor plaintiff's mother, who had long been involved in the case as "next friend," could amend the complaint to sue on her own behalf after the FTCA's statute of limitations had run.[47] Under these circumstances, the Fifth Circuit reasoned that the Government was on notice, from the beginning, that the mother's claim was involved.[48]

Here, Richard Deegan's separate and earlier claim for wrongful death did not give the United States sufficient notice of Plaintiffs' individual claims for emotional distress. A stronger case can be made for "relation back" with respect to Plaintiffs' wrongful death claims. These are the very same claims that Richard Deegan attempted to pursue. Richard Deegan, however, had no authority under Massachusetts law to bring or compromise a wrongful death suit.[49] Because Richard Deegan lacked such authority, the United States had no incentive to investigate the merits of his claim or to attempt settlement. The purpose of providing the United States notice of the claim is to encourage such investigation and, hopefully, extra-judicial resolution.[50] Consistent with the purpose of the notice-of-claim requirement, and a strict construction of the FTCA's waiver of sovereign immunity, this court finds that Richard Deegan did not provide the United

---

[46] 405 F.2d 234 (5th Cir. 1968).

[47] Id. at 239.

[48] Id. See also Avila v. I.N.S., 731 F.2d 616 (9th Cir. 1984) (holding that a father's individual claim related back to the claim he filed on behalf of his mentally incompetent son).

[49] See Marco v. Green, 615 N.E.2d 928, 932 (Mass. 1993).

[50] See Cadwalder v. United States, 45 F.3d 297, 302 (9th Cir. 1995).

States sufficient notice of Plaintiffs' wrongful death claims.  Relation back would be inappropriate under the circumstances.  For the foregoing reasons, Defendants' Motion to Dismiss is ALLOWED.

    AN ORDER WILL ISSUE.

                                                      /s/ Joseph L. Tauro
                                                      United States District Judge